**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert A. GROSSI, Defendant–Appellant.**

**No. 97–2723.**

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1998.

Decided May 4, 1998.

Rehearing and Suggestion for Rehearing Denied May 29, 1998.

Marsha A. McClellan (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Jeffrey B. Steinback (argued), Northbrook, IL, for Defendant–Appellant.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

When he was supervisor of Bloom Township in Illinois between 1981 and 1996, Robert Grossi demanded and received bribes. After a bench trial he was convicted of violating several federal statutes and sentenced to

48 months' imprisonment. A description of one scheme among many illuminates the issues in his appeal.

■ Russell Guzzo, a chiropractor, remarked to Grossi that many of his clients did not pay, to which Grossi replied that the Township could handle the bills out of its general assistance program. At a later meeting Grossi told Guzzo that, in exchange for 25% of the proceeds, Grossi would approve payment of any overdue bills Guzzo submitted. The general assistance program is a welfare program of last resort, for persons who have slipped through the cracks of other welfare programs. It operates without fixed criteria; the supervisor is entitled to authorize distributions when the need seems urgent. The Township has a staff of welfare caseworkers, but Grossi was entitled to bypass them. Grossi did not tell Guzzo that the patients had to be indigent and other sources of payment unavailable; it was enough that the bills be unpaid. Guzzo and his partner Philip Piscopo went to town, submitting not only overdue bills (some as much as six years old) from residents of the Township but also unpaid bills from patients who lived elsewhere and were not eligible for the Township's general assistance program. To increase their take, they doctored many of the bills, adding charges for services never rendered. Grossi promptly approved full payment. Guzzo and Piscopo received checks totaling $23,500 and paid Grossi his cut in cash.

Guzzo and Piscopo testified to this arrangement. Grossi asked the judge not to believe them. They submitted bogus bills to a welfare fund, cheating the Township's most needy residents; they lied to the FBI when asked about the subject and would not testify without immunity; they evaded income taxes on some of their receipts from the general assistance program; and the defense sought to persuade the judge that among the chiropractors' other sins was perjury about their relations with Grossi. The district judge allowed that he would not have found Guzzo's testimony, if uncorroborated, sufficient to show guilt beyond a reasonable doubt. But, the judge added, Guzzo's testimony was corroborated by Piscopo and by the facts that

the bills were paid swiftly (unusual for a public agency) and without the documentation usually entailed. The judge wrote: "[T]here is no conceivable explanation for the miraculous payment of $23,000 or more in old bills for patients not qualified to receive general assistance unless Mr. Grossi was the wizard behind the curtain." Grossi wants us to treat the district judge's skepticism about the chiropractors' testimony as equivalent to disbelief, and to ask whether the corroborating circumstances prove bribery. But this is not how the district judge approached the issue. In the end, he *believed* Guzzo and Piscopo, not because they are upstanding citizens but because their tale rang true. That was his prerogative as trier of fact. The evidence in support of this criminal episode—and the others narrated by the district judge—was adequate and to spare.

■ Grossi sought a new trial, providing the district judge with additional evidence of the chiropractors' low ethical standards. Piscopo may have lied about an IRS investigation; the chiropractors did not deposit checks from the general assistance fund into the partnership's main bank account; the chiropractors have not made restitution of the funds they obtained illicitly. Ordinarily a motion for a new trial requires the district judge to make an estimate about how the newly discovered evidence would have affected the jury. But after a bench trial estimation is unnecessary. Judge Plunkett held a hearing, received the evidence, and revealed exactly how it affects the trier of fact: not at all. That conclusion is no more open to question than are the judge's basic findings of fact, and we therefore hold that the court did not abuse its discretion in denying the post-trial motion. See *United States v. Fruth*, 36 F.3d 649, 651–52 (7th Cir.1994).

Only two legal issues require discussion. Both concern Grossi's conviction under 18 U.S.C. § 666, which provides in part:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the

use of any person other than the rightful owner or intentionally misapplies, property that—(i) is valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

Grossi contends that the "circumstance described in subsection (b)"—that "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program"—was not satisfied because the Township's general assistance program is funded entirely by local sources. He also makes an argument based on subsection (c), to which we return.

■ The general assistance program is not an "organization, government, or agency". As its name implies, it is a *program* carried out by Bloom Township, a "government" subject to the statute if it receives more than $10,000 in federal money—as the Township

concededly does. Grossi wants us to say that, unless the program or activity that was touched by bribery itself received $10,000 in federal funds, the "circumstance described in subsection (b)" does not obtain. Yet money is fungible and its effect transcends program boundaries. The general assistance program has more to spend on welfare (or dangle as a lure for bribes) if the federal government meets some of the Township's other expenses.

Congress has on occasion limited regulation to the specific activity that receives the federal money. For example, Title IX of the Education Amendments of 1972 cover the "program or activity" that receives federal money, which led the Supreme Court to hold that other programs conducted by the recipient were unaffected by the statute. *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984). Section 666(b), by contrast, refers not to a "program or activity" but to the "organization, government, or agency". The difference is palpable. Four years after *Grove City College* Congress amended Title IX to require the entire entity receiving federal funds to abide by the statute's substantive rules. It did this through a new provision, 20 U.S.C. § 1687(1)(A), that defines the scope of coverage as "a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives federal funds. Section 3 of Pub.L. 100–259, 102 Stat. 28 (1988). No one doubts that this language eliminates the program-or-activity restriction of *Grove City College*. Just so with the language of § 666(b). See *United States v. Coyne*, 4 F.3d 100, 108–10 (2d Cir. 1993). It is not our part to trim § 666 by giving its text a crabbed reading. *Salinas v. United States*, —— U.S. ——, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

Now for Grossi's reliance on § 666(c), which carves out "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business". According to the prosecutor, this language means that wages and normal reimbursements paid to a public official do not constitute bribes. According to Grossi, this language means that federal money used to

pay wages or reimburse the government's normal expenses is excluded from the $10,-000, and if what remains does not reach that figure then § 666 becomes inapplicable. We need not decide who is right, because Grossi did not make such an argument at trial and thus has not preserved the issue for decision on appeal. We don't know for sure what the federal funds were used for and therefore lack an adequate foundation for adjudication; perhaps the Township received $10,000 even if reimbursements of wages are excluded. What is more, there is no precedent on point, and the language does not clearly support Grossi. The prosecutor's position has at least collateral support from the holding of *Salinas* that § 666 applies even when the federal funds were not misspent or otherwise affected by the bribery. —— U.S. at —— ——, 118 S.Ct. at 473–75. Thus review for plain error would not aid Grossi even if the record were fully developed. He calls the subject "jurisdictional", in an effort to take advantage of the rule that jurisdictional defects may be noticed at any time, but the district court's subject-matter jurisdiction is supplied by 18 U.S.C. § 3231 and is secure. Just the other day the Supreme Court reminded us of the gulf that separates failure of a claim on the merits from lack of jurisdiction. *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998). Grossi has forfeited any reliance on § 666(c) as a defense.

AFFIRMED.