# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 03-1110, 03-1113 & 03-1195

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MICHAEL SPANO, SR., EMIL SCHULLO,
and JAMES INENDINO,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 CR 30—**Ruben Castillo**, *Judge.*

_____

ARGUED JANUARY 20, 2004—DECIDED MARCH 24, 2005

_____

Before CUDAHY, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury found Emil Schullo, the
Director of Public Safety for the Town of Cicero, Illinois,
guilty of accepting a bribe valued at $5000 or more in
violation of 18 U.S.C. § 666(a)(1)(B), and of the theft of at
least $5000 from a federally funded program in violation of
§ 666(a)(1)(A). His co-defendants, Michael Spano and James
Inendino, were charged and convicted of, among other
offenses, paying the bribe in violation of § 666(a)(2), and

aiding and abetting the theft in violation of 18 U.S.C. § 2 and § 666(a)(1)(A). The jury also found all three men guilty of conspiring to embezzle, steal, or obtain by fraud monies owned by an organization receiving federal funds, namely, the Town of Cicero, under 18 U.S.C. § 371 and § 666(a)(1)(A).

Schullo's responsibilities as Cicero's Director of Public Safety included oversight of the town's police, fire, and health departments. The charges in this case arose out of a private investigation initiated by Schullo to determine whether three police officers lived outside of Cicero's boundaries in violation of a town ordinance. The ordinance required that town employees, including police officers and firefighters, live within the town limits. The investigation was allegedly prompted by a formal labor grievance filed by the town's firefighters, who initially discovered that the three police officers lived outside Cicero. The firefighters' grievance claimed that the residency requirement for town employees was being applied disparately and that they too should be allowed to live outside Cicero's boundaries.

Evidence at trial showed that the Town of Cicero paid $75,831.24 for the investigation commissioned by Schullo—an investigation that in reality had only $34,456.90 of "legitimate" expenses associated with it and which apparently was never used in resolving the firefighters' grievance. The remaining $41,374.34 paid by the town was divided up among the various co-conspirators, including Schullo, Spano, and Inendino.

The defendants in this consolidated appeal argue, as they did below, that § 666 is unconstitutional, either on its face or as applied to them, and thus their convictions must necessarily be vacated.

## I. Analysis

At the heart of the defendants' constitutional challenges to § 666 is the contention that the statute is void for failure to require a connection between the alleged theft/bribe and the federal funds received by the town. Broadly stated, to establish a case under § 666, the government need only prove that an agent of an organization, state, local, or Indian tribal government (or any agency thereof) was offered or accepted a bribe worth $5000 or more (*see* § 666(a)(1)(B)) or stole that amount (*see* § 666(a)(1)(A)) and that the organization, government, or agency received $10,000 under a federal program in any one-year period (*see* § 666(b)).[1] We previously have held, without addressing the constitutionality of § 666, that a plain reading of the statute requires no nexus between the bribe and the federal funds received—in other words, the bribe need not be linked to federal funds to violate the law. *See United States v. Grossi*, 143 F.3d 348, 350 (7th Cir. 1998); *United States v. Fernandez*, 282 F.3d 500, 511 (7th Cir.), *cert. denied*, 537 U.S. 1028 (2002). With regard to their as-applied challenge, the defendants assert that we are wrong not to read a nexus requirement into § 666.

The defendants mount their facial challenge against § 666 under *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), two cases that struck down federal statutes regulating gun possession near schools and gender-motivated violence, respectively. The statutes at issue in those cases were enacted under the Commerce Clause. Critical to the Supreme Court's unconsti-

---

[1] The parties here stipulated that the Town of Cicero received in excess of $10,000 from the federal COPS ("Community-Oriented Policing Services") program, a program intended to help put more police on the streets in Cicero. The defendants argue that the theft/bribe at issue here had no impact on the COPS program funding.

tutionality determination in those two cases was the finding that the effects on interstate commerce of the activities Congress attempted to ban were too attenuated to warrant federal oversight. *See Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 615-17. The defendants claim that the same is true here: Congress, which purported to enact § 666 under the Spending Clause, did not sufficiently tie the theft/bribe to federal monies and, as a result, failed to supply the necessary justification for federal criminalization of such actions.

Alternatively, the defendants argue that Congress, in enacting § 666, improperly exceeded its enumerated powers under either or both the Spending Clause and the Necessary and Proper Clause of the Constitution. U.S. CONST. art. I.

All of the defendants' arguments were dispositively rejected by the Supreme Court in its recent decision, *Sabri v. United States*, 124 S. Ct. 1941 (2004). *Sabri* held § 666(a)(2) to be facially constitutional and found that no nexus between the bribe and federal funds is required.[2] *Id.* at 1945.

---

[2] The Supreme Court granted certiorari in *Sabri* during the briefing of this matter. The defendants acknowledged in their reply brief that the issue to be answered in *Sabri* "expressly addresses" the matters raised here on appeal. We note that the petitioner in *Sabri* challenged only § 666(a)(2) and that the defendants challenge § 666 as a whole, having been convicted under, variously, §§ 666(a)(1)(A), (a)(1)(B), and (a)(2). However, we see no reason for any differentiation in analysis among the (a)(1) and (a)(2) charges, which are basically two sides of the same coin (agents stealing federal funds/accepting bribes versus giving bribes to agents), and defendants do not argue otherwise. Further, nothing in the Supreme Court's *Sabri* opinion leads us to a different conclusion. In particular we note that the Supreme Court stated it granted certiorari to resolve a circuit split "over the need to require a connection between forbidden conduct and federal funds" and then goes on to list cases from various circuits demonstrating the split. *Sabri*, 124 S. Ct. at 1945. Those cases all involved the application

(continued...)

In *Sabri*, the Supreme Court readily found, contrary to the defendants' position, that § 666(a)(2)'s enactment was a valid exercise of Congress's Article I powers:

> Congress has authority under the Spending Clause to appropriate federal monies to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare, and not frittered away in graft or on projects undermined when funds are siphoned off or corrupt public officers are derelict about demanding value for dollars. Congress does not have to sit by and accept the risk of operations thwarted by local and state improbity. Section 666(a)(2) addresses the problem at the sources of bribes, by rational means, to safeguard the integrity of the state, local and tribal recipients of federal dollars.

*Id.* at 1946 (internal citations omitted). The Court also found that the legislative record confirmed Congress acted appropriately within the Necessary and Proper Clause when enacting § 666. *Id.* at 1947 ("Congress's decision to enact § 666 only after other legislation had failed to protect

---

[2] (...continued)

of § 666(a)(1)(B)—agents demanding or accepting bribes—not § 666(a)(2), the provision under which petitioner Sabri was indicted. *See*, *e.g.*, *Grossi*, 143 F.3d at 348 (stating that Grossi "demanded and received bribes," a § 666(a)(1)(B) offense); *United States v. Lipscomb*, 299 F.3d 303, 308 (5th Cir. 2002) (defendant convicted under § 666(a)(1)(B)); *United States v. Zwick*, 199 F.3d 672, 675 (3d Cir. 1999) (same); *United States v. Santopietro*, 166 F.3d 88, 91 (2d Cir. 1999) (same), *all cited in Sabri*, 124 S. Ct. at 1945. We therefore conclude that the Supreme Court did not intend to limit its holding to § 666(a)(2), would find § 666(a)(1) constitutional on the same grounds, and would similarly find no nexus requirement for § 666(a)(1) offenses.

federal interests is further indication that it was acting within the ambit of the Necessary and Proper Clause.").

The Supreme Court also specifically rejected petitioner Sabri's reliance on the *Lopez/Morrison* line of cases, which defendants here echo. The Court noted that the statutes at issue in *Lopez* and *Morrison* failed because of their clear lack of a direct connection to commerce or any sort of economic enterprise and because the nexus articulated by Congress— preservation of social prosperity and productivity—expanded Commerce Clause authority beyond limit. *Sabri*, 124 S. Ct. at 1947. The Court distinguished § 666(a)(2) from the *Lopez* and *Morrison* statutes by finding a direct link between § 666(a)(2) and congressional spending power:

> No piling [of inferences] is needed here to show that Congress was within its prerogative to protect spending objects from the menace of local administrators on the take. The power to keep a watchful eye on expenditures and on the reliability of those who use public money is bound up with congressional authority to spend in the first pace, and Sabri would be hard pressed to claim, in the words of the *Lopez* Court, that § 666(a)(2) "has nothing to do with" the congressional spending power.

*Id.*

Finally, although *Sabri* involved a facial constitutional challenge only, the opinion also forecloses the defendants' as-applied challenge. The defendants argue that to be convicted under § 666, the government had to prove a connection between the theft/bribe and the COPS program funding received by the town. In granting certiorari, the Court specifically noted our position, outlined in *Grossi*, that no nexus is required between the forbidden conduct and the federal monies to support a conviction under § 666. *Sabri*, 124 S. Ct. at 1945. The Court subsequently approved our reasoning in *Grossi* that no direct connection is necessary, because any misuse of funds covered by the statute ultimately affects the monies provided by the federal government:

> It is true . . . that not every bribe or kickback offered or paid to agents of governments covered by § 666(b) will be traceably skimmed from specific federal payments, or show up in the guise of a *quid pro quo* for some dereliction in spending a federal grant. But this possibility portends no enforcement beyond the scope of federal interest, for the reason that corruption does not have to be that limited to affect the federal interest. Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there. And officials are not any the less threatening to the objects behind federal spending just because they may accept general retainers.

*Id.* at 1946 (citations omitted); *cf. Grossi*, 143 F.2d at 350 ("Yet money is fungible and its effect transcends program boundaries. The general assistance program has more to spend on welfare (or dangle as a lure for bribes) if the federal government meets some of the Township's other expenses."). Therefore, the district court was correct in finding that a nexus between the theft/bribe and the federal funds received by the Town of Cicero was not an element of the crimes with which the defendants were charged.

Based on the Supreme Court's *Sabri* opinion, we find 18 U.S.C. § 666 constitutional on its face and as applied to the defendants. Because the other issues raised by the defendants hinge on a finding that § 666 is unconstitutional, we need not address them.

One final matter we must address, however, is the effect of the recent Court decision in *United States v. Booker*, 125 S. Ct. 738 (2005), on the defendants' sentences. In *Booker*, the Court reaffirmed the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and extended its principles to the fed-

eral Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. In its remedial holding, the Court excised the mandatory provisions of the Guidelines. *See id.* at 757. As a result, district courts now have the discretion to sentence outside the ranges set in the Guidelines, and we review these sentences for reasonableness. *See id.* at 765-66.

The defendants failed to raise in the district court an *Apprendi*-based objection to their sentences. Accordingly, we review for plain error. "Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (citation and internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The record discloses that all three defendants received sentences mandated by the Guidelines and increased on the basis of facts found by the judge, not the jury—in other words, their sentences were imposed under a sentencing scheme that we now know is unconstitutional. Their sentences, therefore, were imposed in error, and the error is plain. *See United States v. Paladino*, No. 03-2296, 2005 WL 435430, at *7 (7th Cir. Feb. 25, 2005). We cannot determine, however, whether the defendants would have received the same sentences had the district court been free to exercise the broad sentencing discretion now afforded in the wake of *Booker*. In short, we are unable to resolve whether the defendants' substantial rights were affected when they received sentences imposed under the mandatory Guidelines system.

As we concluded in *Paladino*, the "only practical way . . . to determine whether the kind of plain error argued in these cases has actually occurred is to ask the district judge." *Paladino*, 2005 WL 435430, at *10. To that end, we "order a limited remand to permit the sentencing judge to determine whether he would . . . reimpose his original sentence." *Id.* If the district court determines that the defendants would have received the same sentences, we will conclude that the defendants were not prejudiced and the plain error challenge must fail. We will then affirm the original sentences, provided they are reasonable. *See id.* (citing *Booker*, 125 S. Ct. at 765).

On the other hand, if the district court decides that different sentences would have been appropriate in the exercise of greater discretion, "we will vacate the original sentence and remand for resentencing." *Paladino*, 2005 WL 435430, at *10. Regardless of whether the district court decides to resentence the defendants, the court should abide by the process we set forth in *Paladino* to provide an appropriate explanation for its decision. *See id.*

## II.  Conclusion

For the foregoing reasons, we AFFIRM the defendants' convictions. As to the defendants' sentences, however, we order a limited remand of this case in accordance with the remedial procedure adopted by this circuit in *Paladino*. The district court is directed to return this case to us at the completion of its sentencing determination, pursuant to the procedure set forth in *Paladino*.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*