# United States Court of Appeals
## For the First Circuit

No. 03-1790

UNITED STATES OF AMERICA,

Appellee,

v.

LIBORIO RUBEN CARO-MUÑIZ,

Defendant/Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,
Howard, Circuit Judge,
Carter,[*] Senior District Judge.

Gael Mahony, for appellant.
Jose A. Ruiz, Assistant United States Attorney, with whom
H. S. Garcia, United States Attorney, Nelson Perez-Sosa,
Assistant United States Attorney, Thomas F. Klumper, Assistant
United States Attorney, were on brief for appellee.

April 22, 2005

---

[*]Of the District of Maine, sitting by designation.

**CARTER, <u>Senior District Judge</u>.** Defendant Liborio Ruben Caro-Muñiz (hereinafter "Caro") appeals from a judgment of the United States District Court for the District of Puerto Rico convicting him, after a jury trial, of six counts of bribery, in violation of 18 U.S.C. § 666(a)(1)(B), one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1). In this appeal, Caro makes two challenges to his convictions and one challenge to his sentence. First, he asserts that the federal bribery statute is unconstitutional as applied to the facts of this case. Second, Caro assigns error to the district court's failure to conduct an <u>in</u> <u>camera</u> review of tape recordings made by a government informant during the course of the federal investigation. Finally, Caro claims that the district court erred in its application of sentencing enhancements under the federal sentencing guidelines.[1] For the reasons set forth below, we will affirm Caro's conviction on all counts and remand the case for re-sentencing in light of the district court's error, agreed upon by both parties, in calculating Caro's Adjusted Total Offense Level.

---

[1]Following oral argument, Caro filed a letter with the court pursuant to Fed. R. App. P. 28j, in which he asks the court to examine his sentence in light of the United States Supreme Court's decision in <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005). Because the parties agree that the district court erred in determining Caro's sentence, and because we vacate his sentence and remand the case to the district court for re-sentencing, we do not reach any <u>Booker</u> related issues.

Because this appeal follows a conviction, we recite the facts in the light most favorable to the verdict. See United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 42 (1st Cir. 2004).

During the years 1999 and 2000, Caro served as the mayor of the Municipality of Rincón, Puerto Rico. Rincón received federal funds from the Federal Emergency Management Agency in excess of $10,000 during the calendar years 1999 and 2000.

In 1999, the Federal Bureau of Investigation (hereinafter "FBI") commenced an investigation relating to the possible solicitation of bribes by public officials. Caro was one official targeted by the investigation. In furtherance of its investigation, the FBI utilized a paid informant, José Calderón, who was an engineer in the business of providing engineering services to Puerto Rican municipalities. Calderón was equipped with audio and video recording equipment, which he used to record conversations with municipal mayors. As a result of Calderón's activities as an informant, the FBI accumulated 140 tapes of conversations between Calderón and public officials -- including Caro.

Calderón and Caro met multiple times during 1999 and 2000 to discuss municipal construction projects in Rincón. At these meetings, or shortly thereafter, Caro solicited bribes from Calderón in connection with awarding government contracts. Specifically, Caro solicited bribes for the preparation of two of

four phases of a territorial allocation plan and the contract for the design of a floodlight tower for a municipal sports complex. The record does not support a finding that the territorial allocation plan or the floodlight tower were funded with federal monies.

At an August 18, 2000, meeting at the mayor's office, Calderón informed Caro that the cost of preparing the floodlight towers would be $15,000. Caro responded by requesting $5000 for awarding the contract. Caro received this $5000 payment from Calderón on August 29, 2000. In early September 2002, Caro solicited a bribe in the amount of $3000 from Calderón in connection with the contract for the territorial allocation plan. This bribe was paid in cash.

Caro subsequently used $3000 of the bribe proceeds to pay an invoice at a print shop related to his purchase of political materials for his reelection campaign. Caro also represented on his Puerto Rico Elections Commission reports that the payments received from Calderón were political contributions to his 2000 reelection campaign.

As a result of the FBI investigation, a federal grand jury returned a ten count superseding indictment charging Caro with solicitation of bribes (counts I-VI), extortion (counts VII and VIII), money laundering (count IX), and witness tampering (count

X).[2]  Following a twelve day trial, a jury convicted Caro of counts I-VI, IX, and X.  The district court sentenced Caro to a term of imprisonment totaling seventy-two months and a three-year term of supervised release.  This appeal followed.

## II.

Caro's first challenge on appeal concerns the constitutionality of the federal bribery statute, 18 U.S.C. § 666.  The federal bribery statute provides in relevant part:

> (a)  Whoever, if the circumstance described in subsection (b) of this section exists--
>
>> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>>
>> ...
>>
>>> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization,

---

[2]The witness tampering count arose from Caro's false representations to the Elections Commission.  18 U.S.C. § 1512(b) provides that:

> Whoever knowingly uses intimidation, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>
>> (1) influence, delay or prevent the testimony of any person in an official proceeding;
>>
>> ...
>
> shall be fined under this title or imprisoned not more than ten years, or both.

Id.

> government, or agency involving any thing of value of $5,000 or more;
>
> ...
>
> shall be fined under this title, imprisoned not more than ten years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666. Caro does not dispute that the Municipality of Rincón received more than $10,000 in federal funds during the relevant period, or that the value of the alleged bribery in this case exceeded $5000. Instead, Caro asserts that section 666 "cannot constitutionally be applied in his case, because the criminalization of alleged bribery transactions that are unconnected to federal funds or a federally funded program is not a necessary or proper means of furthering Congress's legitimate interest in protecting federal funds." Brief for Appellant at 10.

We review challenges to the constitutionality of a statute de novo. See Planned Parenthood v. Heed, 390 F.3d 53, 57 (1st Cir. 2004). In Sabri v. United States, 124 S. Ct. 1941 (2004), the United States Supreme Court held that section 666 was not an unconstitutional exercise of congressional authority under the Spending Clause, U.S. Const. Art. I, § 8, cl. 1, or the Necessary and Proper Clause, U.S. Const. Art. I, § 8, cl. 18. Sabri, 124

S. Ct. at 1942-43. Specifically, the Court stated:

> It is true ... that not every bribe or kickback offered
> or paid to agents of governments covered by § 666(b)
> will be traceably skimmed from specific federal
> payments, or show up in the guise of a quid pro quo for
> some dereliction in spending a federal grant. But this
> possibility portends no enforcement beyond the scope of
> federal interest, for the reason that corruption does
> not have to be that limited to affect the federal
> interest. Money is fungible, bribed officials are
> untrustworthy stewards of federal funds, and corrupt
> contractors do not deliver dollar-for-dollar value.
> Liquidity is not a financial term for nothing; money
> can be drained off here because a federal grant is
> pouring in there. And officials are not any the less
> threatening to the objects behind federal spending just
> because they may accept general retainers. It is
> certainly enough that the statutes condition the
> offense on a threshold amount of federal dollars
> defining the federal interest, such as that provided
> here, and on a bribe that goes well beyond liquor and
> cigars.

Id. at 1946 (internal citations omitted). Caro suggests a narrow
reading of Sabri, whereby we would view the Supreme Court's
decision as only standing for the proposition that section 666 is
facially valid. Under this interpretation, Caro suggests that
this court may entertain as-applied challenges to the
constitutionality of section 666 in instances where it is
established that there exists no direct connection between
charged bribery payments and federal funds. We decline this
invitation.

This court has previously rejected a challenge to a
conviction under section 666 in which the defendants contended
that there was an insufficient connection between their conduct
and federal funds received by a municipal police department. See
United States v. Cianci, 378 F.3d 71, 96 (1st Cir. 2004). The

-7-

district court in Cianci instructed the jury -- without objection -- that a connection between the alleged bribe and federal funds was necessary. Id. at 96-97. On appeal, the Cianci panel concluded that the application of United States v. Zanghi, 189 F.3d 71 (1st Cir. 1999), requires the court to "disregard the nexus instruction upon which Corrente and Autiello base their sufficiency challenges to their joint federal bribery conspiracy convictions." Cianci, 378 F.3d at 97.[3] Because the Cianci panel concluded that the nexus instruction was erroneous in light of Sabri, the panel affirmed the appellants' convictions and implicitly held that a nexus requirement is unnecessary in offenses charged under section 666.

Caro argues that the Cianci panel misapplied Sabri insofar as the panel purportedly overlooked the fact that the Supreme Court held in Sabri that section 666 was valid on its face, but subject to as-applied challenges. In support of his position that an as-applied challenge to section 666 may be entertained on appeal, Caro cites United States v. Zwick, 199 F.3d 672 (3d Cir. 1999), and United States v. Santopietro, 166 F.3d 88 (2d Cir. 1999), both of which suggest a nexus between the charged bribery and specific federal funds received by a municipality must be established to support a conviction under section 666. However,

---

[3]The Cianci panel stated that the rule of Zanghi was "an unchallenged jury instruction that is faithful to the indictment and 'not patently incorrect or internally inconsistent' becomes the standard by which evidentiary sufficiency is to be measured." Cianci, 378 F.3d at 84 (quoting United States v. Gomes, 969 F.2d 1290, 1294 (1st Cir. 1992)).

-8-

both <u>Zwick</u> and <u>Santopietro</u> predated the Supreme Court's decision in <u>Sabri</u>, and we find post-<u>Sabri</u> decisions to be more instructive.

In addition to this court's holding in <u>Cianci</u>, our sister circuits have also held that after <u>Sabri</u>, section 666 does not require a nexus between the alleged bribery and the receipt of federal funds. See <u>United States</u> v. <u>Spano</u>, No. 03-1110, 2005 WL 674838, at *3 (7th Cir. Mar. 24, 2005) ("although <u>Sabri</u> involved a facial constitutional challenge only, the opinion also forecloses the defendants' as-applied challenge .... [T]he district court was correct in finding that a nexus between the theft/bribe and the federal funds received by the Town of Cicero was not an element of the crimes with which the defendants were charged"); <u>United States</u> v. <u>Kranovich</u>, No. 03-10226, 2005 WL 665254, at *3 (9th Cir. Mar. 23, 2005) ("we ... hold the government was not required to establish any connection between the embezzled funds and a federal interest, apart from the express requirement in section 666(b) that the County received federal benefits in excess of $10,000"); <u>United States</u> v. <u>Mirikitani</u>, 380 F.3d 1223, 1225 (9th Cir. 2004) ("the Supreme Court [in <u>Sabri</u>] not only held that a federal nexus was not an element of the crime, but it held that no federal nexus must be shown at all.").[4]  We now extend the implicit holding of <u>Cianci</u>

---

[4]Caro points to no decisions -- nor does the court find any -- following <u>Sabri</u> in which a court has required proof of a nexus in an offense charged under section 666.

and join our sister circuits in holding that the government is not required to prove a nexus between the bribery charged and the municipality's receipt of federal funds.[5]

### III.

We now turn to the second issue raised on appeal: whether the district court erred in failing to conduct an in camera review of tape recordings as requested by Caro. Of the 140 tapes generated by José Calderón's work as an informant, the government disclosed only seventy-one of these tapes to Caro prior to trial. Caro moved for the production of all previously undisclosed recordings on the basis that they might contain exculpatory or impeachment evidence.[6] The district court referred this motion to the magistrate judge. In her order, the magistrate judge stated:

> [T]he defense also filed a "Motion Requesting Discovery" pursuing the disclosure of approximately 71 audio recordings, not yet provided in discovery. The defense argues these may reveal exculpatory evidence and that the government should not be the party making such [a] determination. The government claims it has disclosed all tapes where defendant appears talking to José Calderón and that others are not exculpatory.

---

[5]Caro's challenge to his money laundering and witness tampering convictions is based upon his claim that reversal of the bribery convictions would eliminate an essential element of both the money laundering and witness tampering convictions, thus requiring vacation of these convictions. Because we affirm Caro's bribery convictions, and there being no other independent basis upon which Caro challenges his money laundering and witness tampering convictions, we affirm those convictions as well.

[6]Although Caro did not specifically state the legal basis for his discovery request, the Court assumes his request was made pursuant to Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

> The government is instructed, unless it can argue that disclosure will jeopardize the case, – an investigation or life of others - to arrange for ways and means in which the defense can examine those other related recordings. (i.e. probably allowing for reading of transcripts ...)

Order of August 9, 2001, at 2. Caro objected to the magistrate judge's order and specifically moved in the district court for a vacation of this order. In an order dated February 28, 2002, the district court ruled as follows:

> [T]he United States will submit an affidavit sworn by F.B.I. Special Agent Paul Bingham in which he avers that he has listened to and received each of the recordings that had not been disclosed to defendant, that he represents under oath that none of them are related directly or indirectly to this case, that defendant Caro-Muñiz's voice is not heard in any of them and that nor [sic] is he or anyone related to the facts of this case mentioned in these recordings.

Order of February 28, 2001, at 1. Caro did not object to this order. Special Agent Paul Bingham submitted an affidavit pursuant to the district court's order and upon receipt of this affidavit, the district court required the government to disclose three recordings where Caro's voice is heard, six additional recordings that were directly or indirectly related to the Rincón investigation, and transcripts of eight recordings that were not directly or indirectly related to the Rincón investigation. Order of April 25, 2002, at 1. Caro's request for the remaining recordings was denied. Caro did not move for reconsideration of this order, nor did he raise again the issue at trial.

Caro now challenges the district court's denial of his request for an <u>in</u> <u>camera</u> inquiry into the contents of the

recordings. The government contends that Caro has waived his right to assert this claim on appeal because he failed to preserve the issue at trial. We do not agree. The district court's order on Caro's motion constituted a final resolution of the issue. Caro had no basis upon which to believe that raising this pretrial discovery issue again during the course of the trial proceedings would be met with a more favorable result. Cf. Fusco v. Gen. Motors Corp., 11 F.3d 259, 262-63 (1st Cir. 1993) ("where the pretrial proffer is adequate and evidence is excluded unconditionally by a pretrial order, then we think that the proponent has preserved the issue for appeal"). The same rationale applies here. Because appellant properly raised the Brady discovery issue before the district court through pretrial motions, we find that the issue is properly preserved for purposes of appellate review. With that said, we turn to the merits of Caro's challenge.

We review the district court's determinations under Rule 16, Brady, and Giglio for abuse of discretion. See United States v. Rosario-Peralta, 175 F.3d 48, 55 (1st Cir. 1999). At the outset, we note that methods of enforcing disclosure requirements in criminal trials are generally left to the discretion of the trial court. See United States v. Valera, 845 F.2d 923, 927 (11th Cir. 1988).

The United States Supreme Court's holding in Brady requires the government to disclose any exculpatory evidence which is "material either to guilt or to punishment." Brady, 373 U.S. at

87. "Information is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Rosario-Peralta, 175 F.3d at 53 (internal quotation and punctuation omitted). However, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). Similarly, Brady does not permit a defendant "to conduct an in camera fishing expedition through the government's files ...." United States v. Pou, 953 F.2d 363, 367 (8th Cir. 1992). Indeed, "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Instead, "to establish a violation of Brady, a defendant must provide the court with some indication that the materials to which he ... needs access contain material and potentially exculpatory evidence." United States v. Brandon, 17 F.3d 409, 456 (1st Cir. 1994).

In support of his position that the district court erred in failing to conduct an in camera inspection of the tapes, Caro relies on this court's decision in Rosario-Peralta. In Rosario-Paralta, we held that the district court abused its discretion when it refused to review central communication records and tapes related to the pursuit of defendants' alleged drug-transporting vessel. Rosario-Peralta, 175 F.3d at 54. The defendants argued that disclosure of these materials was essential to their theory that their boat could not have traveled from the location where

bales of cocaine were dumped in the ocean to the location where the defendants' vessel was intercepted during the time frame suggested by the government. Id. at 55. The defendants alleged that the records and tapes requested in discovery contained evidence that law enforcement lost sight of the vessel during its pursuit. Id. at 54. This court held that "[i]n light of defendants' theory of the case, and in light of the fact that the government does not dispute that the logs contain the seemingly relevant times and locations of the units in the area, we find that the district court abused its discretion in finding the logs to be irrelevant without first reviewing them." Id. at 55 (emphasis added).

This case is easily distinguishable. Caro has presented neither a theory regarding the existence of potentially exculpatory evidence on the tapes, nor has he made any showing that the tapes would be of substantial assistance to his defense. His discovery request to the district court only stated that "[t]he recordings not provided in discovery may contain evidence that exculpates the defendant." Motion Requesting Discovery, at 2. This is insufficient to warrant an in camera review of the tapes. Caro's request that seventy-one tape recordings containing hours of dialogue be reviewed by the district court is hardly particularized. This is precisely the type of fishing expedition that Brady does not permit. Caro identified no particular tape of specific interest and has provided no basis for this court to conclude that any recording contained potentially favorable

-14-

evidence. In the absence of a particularized and focused request, the district court is not required to troll through voluminous recordings in search of potentially exculpatory evidence.

When a defendant fails to present a narrowly tailored and specific request, Brady places the burden of disclosing evidence favorable to the defendant on the government, not on the court. See Ritchie, 480 U.S. at 59 ("In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final."); cf. United States v. Brooks, 966 F.2d 1500, 1505 (D.C. Cir. 1992) ("Although the defendant has pinpointed specific files, he has not identified exculpatory evidence [that the prosecution] withheld, so the case calls for the usual prosecutorial rather than judicial examination.") (internal citation and punctuation omitted). Furthermore, "if the government does fail to disclose Brady material, the defendant has a constitutional remedy for the nondisclosure only if the defendant can show that there is a reasonable probability that 'the omission deprived the defendant of a fair trial.'" United States v. Presser, 844 F.2d 1275, 1282 (6th Cir. 1988) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)) (internal citations omitted). Without a specific reference to potentially exculpatory evidence, we hold that the district court did not

abuse its discretion in allowing prosecutorial examination of the tapes.

**IV.**

Having concluded that Caro's convictions stand, we turn now to the sentence imposed by the district court. Caro alleges that the district court erred in its application of a sentencing enhancement pursuant to United States Sentencing Guidelines (hereinafter "U.S.S.G.") § 2J1.7.

We review a district court's interpretation of the sentencing guidelines de novo. See United States v. McLaughlin, 378 F.3d 35, 38 (1st Cir. 2004).

Pursuant to U.S.S.G. § 3D1.2(c), the district court grouped together the eight counts upon which Caro was convicted. In accordance with U.S.S.G. § 3D1.3, the district court determined that the appropriate offense level is that for the most serious counts comprising the group. The district court properly determined that Caro's money laundering conviction was the most serious of the eight counts. For sentencing purposes, a conviction in violation of 18 U.S.C. § 1956(a)(1)(A)(i) mandates the application of the "offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct))." U.S.S.G. § 2S1.1. The Base Offense Level for soliciting and receiving bribes is 10. The Court then applied a number of enhancements to the Base Offense Level under the

-16-

Sentencing Guidelines, one of which was a three-level enhancement under U.S.S.G. § 2J1.7.[7] It is the application of this enhancement under § 2J1.7 that Caro contests. Caro alleges that the district court erroneously applied the enhancement to the money laundering offense when it could only properly be applied to the witness tampering offense. He does so because this application yielded an Adjusted Total Offense Level of 27 instead of 24.

The Government agrees that the district court's application of the § 2J1.7 enhancement was erroneous.

> The United States concedes that the district court erred at sentencing. The court improperly applied a three-level enhancement under United States Sentencing Guidelines § 2J1.7. Section 2J1.7 requires that the three-level enhancement be only applied [to] the offense committed on release. In this case, the witness tampering offense was the only offense committed on release. The sentencing court improperly applied the three-level enhancement to the money laundering offense which had been determined to be the highest offense following United States Sentencing Guidelines § 3D1.2. Therefore, Caro's case should be remanded for re-sentencing.

Brief for Appellee at 14-15. The position so expressed is supported by the case of United States v. Bahhur, 200 F.3d 917 (6th Cir. 2000). We have carefully considered the sentencing record herein and conclude that the agreed-upon position of the

---

[7]U.S.S.G. § 2J1.7 reads as follows:

> If an enhancement under 18 U.S.C. § 3147 applies, add **3** levels to the offense level for the offense committed while on release as if this section were a specific offence characteristic contained in the offense guideline for the offense committed while on release.

parties is correct and that the § 2J1.7 enhancement was improperly applied, to the prejudice of the appellant, and improperly inflated the Adjusted Total Offense Level.  The sentence must be vacated as erroneous.

**V.**

For the reasons set forth above, we **affirm** Caro's convictions on all counts.  We **vacate** Caro's sentence and **remand** the case to the district court for re-sentencing consistent with this opinion. All issues concerning application of the present advisory guideline regime, post United States v. Booker, 125 S. Ct. 738 (2005), remain open for resolution in the district court on re-sentencing.

**SO ORDERED.**