

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-2007

# USA v. Weaver

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4596

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Weaver" (2007). *2007 Decisions.* Paper 1437.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1437

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4596

UNITED STATES OF AMERICA

v.

EUGENE D. WEAVER,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00320-5)
District Judge: Honorable John P. Fullam

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2007

Before: McKEE, AMBRO and STAPLETON, Circuit Judges

(Opinion filed : March 22, 2007)

OPINION

AMBRO, Circuit Judge

Eugene Weaver appeals his convictions for aiding and abetting wire fraud in

violation of 18 U.S.C. §§ 2(a) & 1343, conspiracy to commit wire fraud in violation of 18

U.S.C. § 371, aiding and abetting theft from a program receiving federal funds in

violation of 18 U.S.C. § 666(a)(1)(A), and conspiracy to commit theft from a program receiving federal funds in violation of 18 U.S.C. § 371. For the following reasons, we affirm his convictions on all counts.

## I. Facts[1] and Procedural History

This case concerns a scheme to steal money from a federally funded adult education program. The Community College of Philadelphia ("CCP") administered a non-credit adult basic education program funded by the U.S. Department of Education. CCP held classes on its main campus and at a variety of satellite locations. One of those locations was the Sister Clara Muhammad School (the "School").

Between 1999 and 2001, this program was a Potemkin village: while the School and CCP personnel maintained all the trappings of a functioning program—hiring and paying teachers, maintaining a course schedule, filing registration forms, and causing CCP to pay rent to the School for the classrooms—no courses were taught. Rather, Faridah Ali, a School administrator, and Delores Weaver, a CCP administrator, led a fraudulent scheme to steal the money allocated to the program. Specifically, they ensured that CCP paid the School rent money, which was then misappropriated, and that CCP paid a variety of "teachers" for courses that never took place. Many of the ghost teachers were relatives of one of the scheme's principals.

Eugene Weaver, Delores Weaver's son, was one of the program's ghost teachers.

_____

[1] This section presents the facts in the light most favorable to the jury's verdict. *See United States v. Jackson*, 443 F.3d 293, 298–99 (3d Cir. 2006).

Over the course of three years, he was paid more than $47,000 for courses that he could not have taught because he was either out of town or had an in-town conflict.

In the superseding indictment, the Government charged Weaver[2] with one count of conspiracy to commit wire fraud, six counts of aiding and abetting wire fraud, one count of aiding and abetting theft from a program receiving federal funds, and one count of conspiracy to commit theft from a program receiving federal funds. Weaver was tried alongside Faridah Ali, Lakiha Spicer, and Azheem Spicer. Delores Weaver was supposed to be tried at the same time, but her trial was severed because of an evidentiary dispute that is on appeal to our Court. After a full trial, the jury convicted Weaver on all counts. This appeal follows.[3] Each issue is dealt with in turn.

## II. Sufficiency of the Evidence

Weaver contends that the evidence was insufficient to prove (1) the requisite criminal intent and (2) the conspiracy charged in the indictment. When we review a conviction for sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### A. Criminal Intent

---

[2] We use "Weaver" to refer to Eugene Weaver. When referring to Delores Weaver, we use her full name.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the United States). We have jurisdiction under 28 U.S.C. § 1291.

Weaver does not dispute that the Government's evidence supported most of the elements of the crimes for which he was tried. One element that he does dispute is intent. Wire fraud is a specific intent crime. A defendant cannot be convicted of it unless the Government proves beyond a reasonable doubt that he knowingly and willfully participated in a scheme to obtain money or property through fraud and specifically intended to do so. *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004); *United States v. Antico*, 275 F.3d 245, 260 (3d Cir. 2001); *see also United States v. Henry*, 20 F.3d 112, 115 (3d Cir. 1994). Similarly, a conviction for theft from a federally funded program under 18 U.S.C. § 666(a)(1)(A) requires a specific intent to convert money or property from the program. *United States v. Richards*, 9 F. Supp. 2d 455, 458 (D.N.J. 1988); *cf. United States v. Ford*, 435 F.3d 204, 211 (2d Cir. 2006) (holding that § 666(a)(1)(B) is a specific intent crime). Thus, we accept Weaver's argument that, to sustain convictions on all counts, the Government must have proved that he knew he improperly received payment for courses he did not teach.

Weaver admits that he received money from CCP and that it recorded the payments as salary for courses listing him as the teacher. He also does not dispute that Delores Weaver and Faridah Ali were involved in a large-scale conspiracy to steal money from the adult education program. He claims, however, that the Government did not prove that he knew that he was receiving money as part of that fraudulent scheme. Rather, he argues that he reasonably could have believed that the payments were (1) for legitimate work that he performed for CCP a few years earlier, or (2) for his mother's

4

legitimate work at CCP (because Delores Weaver was a CCP administraor and was a secondary holder of the account into which the money was paid). In this context, Weaver contends that the Government did not prove that he had the criminal intent required to support his convictions.

At trial the Government introduced evidence of the following facts relevant to Weaver's specific intent argument. The School assigned teachers to courses using "availability notices" on which the putative teacher requested courses and stated his availability. The Government submitted notices through which Weaver requested that he be assigned to teach courses at the School. There are signatures on the notices that purport to be those of Eugene Weaver. The Government submitted the signature on Weaver's passport and other documents so that the jury could compare them. The signatures appear to be similar—certainly enough so that the jury reasonably could have concluded that Weaver signed the availability notices and, therefore, affirmatively requested that he be assigned to teach courses. Fed. R. Evid. 903(b)(3); *see also United States v. Clifford*, 704 F.2d 86, 90 (3d Cir. 1983). Weaver, however, was out of town for much of the time that the notices indicated that he was available and had numerous in-town conflicts when he was not. From that evidence, the jury could have concluded that Weaver did not teach and never intended to teach the courses to which he was assigned.

As to the payments Weaver received, the Government submitted evidence showing that he was the primary holder of the account into which CCP paid his teaching salary. When it made a ghost-teaching payment, the entry on the next bank statement reflected

5

that the payment was from CCP and that it was a payroll payment. Weaver withdrew money from his account soon after many of the deposits. CCP business records admitted in evidence show that Weaver was notified on several occasions that his payments for teaching would be forthcoming but late. Under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), the jury was entitled to consider the records as substantive evidence that he was in fact notified by CCP that his payments for teaching were forthcoming.

As to Weaver's claim that money could have been for legitimate work for CCP, the Government counters that there is nothing in the record to suggest that Weaver did any legitimate work for CCP. Thus, the jury had no reasonable basis on which to draw that conclusion. As to his argument that the money could have been his mother's, the Government notes that it would make little sense for the payments to be his mother's regular salary, as the payments were spaced irregularly and of varying amounts.

From the evidence presented, the jury reasonably could have concluded that Weaver knowingly and willfully participated in every aspect of the ghost-teaching scheme, from requesting courses that he knew he would not teach to spending the money that CCP paid him. We would be hard pressed to conjure anything that would make a reversal on this issue even a possibility.

## B. Number of Conspiracies

Weaver contends that the Government's evidence did not support the existence of one master conspiracy; rather, it suggested only the existence of multiple "hub and spoke"

6

conspiracies. He claims this is a problem because the evidence did not support the existence of the conspiracy charged. In the superseding indictment, the Government alleged one master conspiracy comprised of two sub-schemes: the rent payment sub-scheme and the ghost teaching sub-scheme. The indictment clearly alleged that Eugene Weaver's involvement was limited to the latter.

Deciding how to characterize a large-scale criminal enterprise like this one is rarely easy. We note, however, that the size and scope of a conspiracy are issues of fact, and we typically defer to the jury's resolution of them. *United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002). Still, our deference is not absolute; we review for substantial evidence, *id.*, and in determining whether the Government's proof was sufficient to sustain a determination that there was one overarching conspiracy, we consider the following factors: (1) whether the conspirators were bound by a common purpose, (2) whether the agreement brought about a continuous result that could not carry on without the ongoing cooperation of the conspirators, and (3) the extent of the participants' overlap. *United States v. Kelly*, 852 F.2d 255, 259 (3d Cir. 1989) (citations omitted).

Here, the Government argues that the overall purpose of the conspiracy was to steal federal funds granted to CCP by pretending to operate an adult education program. The Government freely admits that the conspiracy's principals—Delores Weaver and Faridah Ali—devised two separate but related means of obtaining CCP money: (1) by paying teacher salaries to ghost teachers and (2) by paying rent for the putative location of the classes. All members of the conspiracy—the principals and the ghost

7

teachers—profited from the scheme. By ensuring that the program's books and finances looked normal (*i.e.*, it was paying both rent and teachers, as one would expect), the two sub-schemes worked together to keep up the appearance that everything was functioning normally. Similarly, the participation of ghost teachers like Eugene Weaver was vital to keep up the ruse that the program was actually holding classes. By formally scheduling Weaver to teach courses, paying him for teaching, and keeping records to that effect, the principals helped ensure that they maintained all of the trappings of an extant program.

It is true that the evidence does not show that lower-level co-conspirators (and Weaver in particular) knew about one another. Moreover, it is unclear to what extent they knew the breadth of the overall scheme. These facts, however, do not mean that a jury could not find the existence of one unified conspiracy. Because the overarching scheme had a common purpose with separate but interdependent parts, and the Government proved that Weaver agreed with Delores Weaver to participate in one of the sub-schemes, the fact that he may not have known all of the details, participants, or the overall scope of the conspiracy does not defeat the jury's finding. *United States v. Padilla*, 982 F.2d 110, 114 (3d Cir. 1992) (citing *United States v. Adams*, 759 F.2d 1099, 1109–10 (3d Cir. 1985)) ("The government need not prove that each defendant knew all the details, goals, or other participants.").

Because the Government presented evidence from which the jury could have concluded beyond a reasonable doubt that Weaver participated in a single conspiracy to

steal money from CCP, we cannot reverse on this ground.[4]

## III.    New Evidence

Weaver also argues that his motion for a new trial based on newly discovered evidence was improperly denied.  Specifically, he claims that after trial he discovered an affidavit of one of the investigators, and a statement by Delores Weaver to investigators, that help his case in each instance.  His argument is dead on arrival, for the Government disclosed the existence of both of these documents in a letter sent to defense counsel some three months before trial.  In that letter, the Government stated that the documents were available for pick-up at the U.S. Attorney's office.  Weaver's trial counsel apparently did not pick up the documents, as his appellate counsel states that they were not in the case file.  Thus, Weaver did not exercise reasonable diligence, as he must, to succeed in a motion for a new trial based on newly discovered evidence.[5]  *United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006).  The District Court's denial of Weaver's

---

[4] Weaver also claims that the indictment impermissibly varied from the proof at trial because the former alleged a single conspiracy, while the proof at trial only supported the existence of multiple conspiracies.  Because we conclude that the evidence supported the existence of the conspiracy alleged in the indictment, there was no impermissible variance.  *See United States v. Polichemi*, 324 F.3d 698, 709 (7th Cir. 2000) (noting that a variance claim in this context is one that the Government did not produce sufficient evidence of the single conspiracy alleged in the indictment).

[5] Weaver intimates that trial counsel's failure to obtain these documents amounts to ineffective assistance.  While we understand his frustration with trial counsel, we typically do not resolve ineffective assistance claims on direct appeal; rather, we require that they be brought in a collateral proceeding in which a better record can be developed.  *United States v. Thornton*, 327 F.3d 268, 271–72 (3d Cir. 2003).  Our usual rule applies here, as Weaver deserves the chance to bring his claim on a record developed specifically for that purpose.  Thus, we leave the ineffective assistance question for a district court to resolve in the first instance in a collateral proceeding.

9

motion, therefore, was proper.

## IV. Jury Instructions

Weaver argues that the District Judge improperly instructed the jury by failing (1) to give a culpable participation charge, (2) to instruct on the materiality element of wire fraud, and (3) to define the intent element of the theft charge. At the outset, we note that Weaver's counsel failed to object to the District Court's instructions. Thus, we review the instructions for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). To reverse, we must determine that there was an error, it was plain, and it affected Weaver's substantive rights. Even if so, correction of that error should only be ordered where it seriously affected the fairness, integrity, or public reputation of the proceeding. *United States v. Olano*, 507 U.S. 725, 733–38 (1993).

### A. Culpable Participation

We have held that a jury can only convict a person of mail or wire fraud if it is convinced of the person's "culpable participation," *United States v. Pearlstein*, 576 F.2d 531, 545 (3d Cir. 1978), that is, if it is convinced that the person "ha[d] knowledge of the illicit objectives of the fraudulent scheme and willfully intend[ed] that those larger objectives be achieved." *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 908–09 (3d Cir. 1991); *see also United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005). Thus, a district court must make the culpable participation requirement clear.

That occurred here. The Court instructed that to convict the jury must find that each defendant "was a knowing participant in a fraudulent scheme to obtain money . . .

10

from the community college . . . without a right to have it." App. at 1150. In addition,

the Court stated:

> [T]he defendant cannot be convicted merely because students dropped out of the courses . . . [or ] because the program didn't work out the way everybody wanted it to.
>
> They can be convicted only if, in fact, they knowingly arranged matters, so that they would be paid for—when they shouldn't— . . . paid money that they were not entitled to receive.
>
> . . . .
>
> If that was the arrangement and if, in fact, they knowingly arranged matters so that they collected money for not teaching when they were supposed to be teaching, that would be a basis on which you could find that they acted with fraudulent intent.
>
> . . . .
>
> . . . [T]he key to all of these charges is, do you find that the defendant whose case you are considering acted with fraudulent intent? Did they knowingly commit a crime, or were they simply going with the flow of what—of this—and were they—were all of the unfortunate wasting of money the result of poor organization and poor supervision?
>
> . . . .
>
> The issue then is, is the Government correct in characterizing this as simply hiring ghost employees for the purpose of draining money away from the community college program that the people did not deserve and . . . kn[ew] they were not entitled to?
>
> Was this—in short—a fraudulent scheme to derive money from the community college that the—instead of providing the program that was intended for—went into the pockets of people, who didn't deserve it?
>
> In short, the issue is, were the defendants acting in good faith or were they not?
>
> . . . .
>
> And I will emphasize one more time that before you can convict of conspiracy, you must prove that the defendant whose case you are considering was a *knowing participant in an illegal scheme*. That is to say, a scheme to defraud that he

11

> or she *knew that that was what was going on and acted with criminal intent.*
>
> . . . .
>
> As I said, you consider each person's case separately.

App. at 1158–63 (emphasis added).

These instructions conveyed the basic point that guilt requires that Weaver knew that he was participating in the fraudulent scheme alleged in the indictment. The instructions drew the proper distinction between unwitting participation in a fraudulent scheme and culpable participation. They are not erroneous.

## B.    Materiality

Turning to the District Court's failure to instruct on the materiality element of wire fraud, the Government concedes that the Court did not so instruct and that its failure was error. *See Neder v. United States*, 527 U.S. 1, 25 (1999) ("[W]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."). Even assuming the error was plain, to reverse we must find that it affected Weaver's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993).

It did not. Here, the falsehood that the Government alleged was Weaver's representation that he was teaching adult education courses at the School when he, in fact, was not. This misrepresentation was the heart of the alleged fraudulent scheme; hence the jury could not reasonably conclude that Weaver's false claim that he was teaching was somehow immaterial to the scheme by which he fraudulently received money *for teaching*. The error, therefore, did not affect Weaver's substantial rights, and we are

12

unable to grant relief under the plain error standard. *Cf. United States v. Sharma*, 190 F.3d 220, 229–30 (3d Cir. 1999) (holding this error harmless).

## C.    Intent

Weaver argues that the District Judge failed to instruct the jury as to the intent element of the theft charge. Specifically, an element of the statute is that the defendant "embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies" the federally funded program's property. 18 U.S.C. § 666(a)(1)(A). Put simply, did Weaver intend to deprive the program of property by unlawful means?

In his instructions, the Judge explained this element as follows: "So basically, what is required . . . [is that] the defendant whose case you are considering was an agent of that [federally funded] organization and that that person obtained money from the organization by fraud." App. 1149. Weaver's objection is that the Judge did not explain the meaning of the word "fraud," thus potentially confusing the jury as to the level of intent required.

In determining whether a jury charge was improper, we consider whether it "as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc). "No error will be found if the district court correctly communicated the substance of the law to the jury so that the jury was not misled as to the relevant law or issues." *United States v. Parise*, 159 F.3d 790, 798 n.6 (citing *United States v. Traitz*, 871 F.2d 368, 285 (3d Cir. 1989)). Moreover, we

13

are reluctant to focus on one portion of a charge in isolation, but "consider the totality of the instructions." *United States v. Coyle*, 63 F.3d 1239, 1246 (3d Cir. 1995).

Here, while the Judge provided little explanation of the intent element of § 666 when he read the statute to the jury, he went on to explain that element of all of the charged crimes later in the discussion. *See* Part IV.A, *supra*. Essentially, he consolidated the discussion because all of the charges required fraudulent intent.[6] This was reasonable, and it properly conveyed the substance of the charges to the jury.

## V.      Wiretapping Evidence

Weaver claims that the District Court improperly admitted wiretapping evidence. In seeking authorization to collect the evidence under 18 U.S.C. § 2518, the Government submitted its applications to Judge Eduardo Robreno of the Eastern District of Pennsylvania. Counting new applications and extensions, the Government submitted a total of 19 requests for authorization in the course of its investigation of the various defendants in this case. This process, Weaver alleges, violated the District's local rule, as the various applications should have been submitted to different judges.

The Eastern District of Pennsylvania's Local Criminal Rule 41.1 provides that applications "shall be assigned on a random basis, to each Judge of the Court, or in his or her absence the Emergency Judge, in accordance with the provisions of Local Civil Rule

---

[6] Section 666 does not require fraudulent intent *per se*, for one can knowingly convert or steal money without fraud. Here, however, the Government built its case around an allegedly fraudulent scheme, so the Judge correctly instructed the jury only on the "obtains by fraud" language in the statute. 18 U.S.C. § 666(a)(1)(A).

14

40.1." Local Civil Rule 40.1 provides that all related matters shall be assigned to the same judge. Recognizing that there is no express related-matters criminal rule, Judge Robreno read the local criminal rule in connection with the local civil rule and determined that he should decide all wiretapping applications related to this case. Delores Weaver moved to suppress the wiretapping evidence on the basis of Judge Robreno's alleged error,[7] and Judge Fullam—the trial judge—rejected her motion, finding that the local civil and criminal rules could be read together to allow judges to take assignment of all applications related to the same investigation. *See United States v. Weaver*, No. 04–320–41, 2004 WL 2399820 (E.D. Pa. Sept. 29, 2004).

Though the local rules could be clearer on this issue, the District Court's resolution was sensible. Moreover, Weaver's statutory rights were adequately protected, as 18 U.S.C. § 2518(1) provides only that applications should be decided by a "judge of competent jurisdiction." Here, there is no question that Judge Robreno fit that description. Weaver's Fourth Amendment argument hardly warrants discussion, as no court has held that the Amendment requires assigning wiretap applications arising out of an investigation to different judges.

As an alternate sustaining ground, we note that Weaver does not have standing to challenge the admission of wiretapping evidence when he was not "a person who was a

---

[7] We note that Weaver has not presented evidence that he joined this motion—or any other motion to suppress the evidence at issue. Because he apparently failed to do so, our standard of review is plain error. *United States v. Mornan*, 413 F.3d 372, 378 (3d Cir. 2005). We need not delve too far into this issue because we conclude that there was no error at all.

15

party to any intercepted wire or oral communication or a person against whom the interception was directed," 18 U.S.C. § 2510(11). *Alderman v. United States*, 394 U.S. 165, 175, n.9 (1969); *accord In re Harkins*, 624 F.2d 1160, 1165 n.8 (3d Cir. 1980). Here, Weaver was not a party to any of the intercepted communications, nor was he mentioned in them. Rather, the evidence was directed against other alleged conspirators only.

We note further that we are troubled by defense counsel's presentation of this issue. He concludes his discussion with the following statement: "[B]ecause the government and Judge Robreno's collusive actions (and Judge Robreno's remarkable rationalization of these actions) evidence only of his failure to fulfill his obligation to act independently in reviewing wiretap applications, and because these collusive acts deprived appellant of the protection of the Fourth Amendment, appellant's conviction should be reversed." Appellant's Br. 76–77. Though (as explained above) we disagree with counsel's argument on the merits, we take special issue with counsel accusing a District Judge of colluding with a party. Here, counsel does not support that charge with *any* evidence; rather, it is clear that counsel and Judge Robreno merely interpreted a provision of law differently. The rules of professional conduct prohibit making a statement disparaging a judge's integrity with reckless disregard to the statement's veracity. *See* Model Rules of Prof'l Conduct R. 8.2(a) (1983). It is decidedly out of bounds for lawyers practicing before our Court to transform disagreements over the law into bald allegations about a judge's integrity.

16

## VI.     Conclusion

We hold that the evidence was sufficient to sustain Weaver's conviction on all counts.  We further hold that his motion for a new trial based on newly discovered evidence was properly denied, and we perceive no error in the handling of the Government's pre-trial applications to engage in wiretapping.  The jury instructions did contain one error: the District Judge improperly failed to charge the materiality element of wire fraud.  That error, however, was harmless.  Thus, Eugene Weaver's conviction on all counts is affirmed.