In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1459

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MHAMMAD ABU-SHAWISH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 CR 211—**J.P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 6, 2007—DECIDED NOVEMBER 1, 2007

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Mhammad Abu-Shawish appeals his conviction after a trial by jury. The jury found Abu-Shawish guilty of federal program fraud in violation of 18 U.S.C. § 666(a)(1)(A). He challenges the sufficiency of the indictment and the sufficiency of the evidence on the grounds that the government did not allege in the indictment or prove at trial that he was an agent of the organization that he defrauded, or that he defrauded the organization for which he was an agent. For the reasons stated herein, we vacate the conviction and remand the case for further proceedings consistent with this opinion.

## I.  Background

Each year, the City of Milwaukee receives over twenty million dollars of federal money from the United States Department of Housing and Urban Development. The City then makes the funds available to community groups through a development block grant program. These groups submit grant applications to the City sketching out their plans to develop the community in a particular way. The grant applications are reviewed by the block grant program's evaluation committee and city council representatives, and once an application is accepted, the federal funds are disbursed to the relevant community group. The community group then uses the funds to fully research and develop their community development proposal, and in some cases begin effectuating the proposal.

This is precisely what Abu-Shawish, as founder and executive director of Arabian Fest/American Festival, Inc. ("Arabian Fest"), a Milwaukee-based non-profit community organization, set out to do. Initially, Abu-Shawish approached Milwaukee Alderman Bob Donovan with the idea of bringing businesses to Muskego Avenue, a commercial strip near Arabian Fest headquarters. Following Alderman Donovan's advice, in April 2001, Abu-Shawish sent a letter to the City of Milwaukee Community Block Grant Administration Office on behalf of Arabian Fest seeking a $100,000 grant to research and create a development plan for Muskego Avenue.[1] In June 2001, Juanita Hawkins, who ran the block grant program, sent Abu-Shawish a letter notifying him that the City had approved his request in the amount of a $75,000 grant.

---

[1] In particular, his letter requested the funds in order to recruit new businesses to open along Muskego Avenue, relocate other businesses in that area, and facilitate and maintain a relationship between businesses and the neighborhood.

Over the next few months, Abu-Shawish claims to have performed a number of tasks in order to further his proposal, including supervising his staff, working on crime reduction in the Muskego Avenue area, speaking with local merchants, conducting traffic counts, and constructing a database of Arabian Fest vendors to talk about relocating to the Muskego Avenue area. Throughout the project, he presented expense records to the City to justify the receipt of funds, as well as an advance for future expenses. The following table presents the dates when federal funds were disbursed to Arabian Fest,[2] the amounts disbursed, and (to the extent that the record has established it) where the money was spent:

| Date of disbursement | Amount disbursed | How funds were spent[3] |
|---|---|---|
| January 16, 2002 | $4,477.37 | Record does not comment |
| January 17, 2002 | $31,707 (advance) | Abu-Shawish took $6,707 in cash and used the remainder to pay Arabian Fest operating expenses (including wages) |

---

[2] Abu-Shawish was the only signatory on the Arabian Fest accounts.

[3] Appellant's brief indicates that Abu-Shawish used some of the grant money to pay for new computers, but it does not note which disbursement accounted for this expense.

| March 5, 2002 | $32,097 | Abu-Shawish transferred $10,000 to a personal business account, and then took $6,000 in cash |
|---|---|---|
| May 9, 2002 | $4,301.34 | Record does not comment |
| July 26, 2002 | $2,416.87 | Record does not comment |

A City of Milwaukee audit later showed that Abu-Shawish accounted for the checks to cash and the transfer to the personal bank account as wages for himself. On May 16, 2002, Abu-Shawish submitted Arabian Fest's Muskego Avenue Redevelopment Plan to Ms. Hawkins.

This case drew the attention of the authorities because Arabian Fest's redevelopment plan was substantially plagiarized from a report submitted by Randy Roth, another member of the Milwaukee community. Roth was a consultant in Milwaukee who specialized in urban development plans. In March 2001, Alderman Donovan approached Roth and asked him to work on a redevelopment plan for the Muskego Avenue corridor. The plan was sponsored by Milwaukee Alliance, a neighborhood group affiliated with Donovan. Because Donovan was connected to Milwaukee Alliance, Roth was able to utilize some of its employees to assist him with the project. Two of those employees were cousins, Angela and Lisa Sanfilippo. What Roth did not realize was that Donovan also sent Angela and Lisa to assist Abu-Shawish as he drew up his plan for Muskego Avenue. While Roth did not have any formal business relations with Abu-Shawish, Donovan privately instructed Angela to bring Abu-Shawish the finished product from Roth.

The development plan that Abu-Shawish submitted to the Milwaukee Community Development Block Grant Division was essentially identical to the plan drawn up by Roth. In fact, Arabian Fest's plan was identical except for the following minor differences: the cover was changed; references to "Milwaukee Alliance" were replaced with "Arabian Fest"; the font size was changed; and parts of Roth's plan were omitted.

Because the City of Milwaukee essentially paid money for a report that Abu-Shawish never actually wrote, he was charged on October 2, 2003 in a criminal complaint alleging federal program fraud violations under 18 U.S.C. § 666(a)(1)(A). After the government severed and dismissed certain ancillary charges, the one remaining § 666 count was tried to a jury on June 27, 2005.[4] On June 29, 2005, the jury returned a verdict of guilty. Abu-Shawish was subsequently sentenced to three years' imprisonment and $76,100 in fines.

## II.  Discussion

Abu-Shawish argues that the superseding indictment did not properly charge him with a violation of 18 U.S.C. § 666(a)(1)(A). Under ordinary circumstances, the sufficiency of an indictment presents a question of law, which is reviewed de novo. *United States v. Aldaco*, 201 F.3d 979, 982 (7th Cir. 2000). However, in this case, the challenge to the sufficiency of the indictment was not raised before the district court. As a result, the challenge is reviewed for plain error. *United States v. Davis*, 471 F. 3d 783, 790

---

[4]  Specifically, Count One of the Fourth Superseding Indictment-A charged Abu-Shawish with fraudulently obtaining over $5,000 in federal grant funds on March 31, 2002.

(7th Cir. 2006). Plain error requires a finding (1) that there is error, (2) that is plain, and (3) that affects substantial rights; the court may then exercise discretion to correct such error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Prude*, 489 F.3d 873, 880 (7th Cir. 2007). An indictment is legally valid if it: "(1) states all the elements of the crime charged; (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to later prosecution of the same offense." *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995).

Abu-Shawish was charged with violating 18 U.S.C. § 666(a)(1)(A), which prohibits theft from organizations receiving funds under federal assistance programs. The statute provides as follows:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

   (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

   (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

      (i) is valued at $5,000 or more, and

      (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; . . .

(b) The circumstance referred to in subsection (a) of this section is that the organization, government,

or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a), (b).

The government claims that to prove that an individual has violated this section of the criminal code, it merely has to demonstrate that: (1) the defendant was an agent of an organization; (2) in a one-year period, the organization received in excess of $10,000 in federal funds under the grants, contracts, subsidies, loans, or some other form of federal assistance; (3) the defendant embezzled, stole, obtained by fraud, converted to another, or intentionally misapplied money or property; (4) the money or property was under the care, custody or control of the organization; and (5) the money or property had a value of $5,000 or more. Consistent with this view of the statute, the Fourth Superseding Indictment-A charges as follows:

2. During the 12-month period between on or about June 1, 2001, and on or about May 31, 2002, Arabian Fest received in excess of $10,000 under a federal program involving grants. The Executive Director of Arabian Fest, a non-profit organization, was Mhammad Aziz Abu Shawish. . .

3. The federal grant funds were Community Development Block Grant (CDBG) funds from the United States Department of Housing and Urban Development (HUD) which were administered through the City of Milwaukee's Community Development Block Grant Administration Office (CDBG-City administered funds).

4. On or about June 19, 2001, CDBG-City administered funds were awarded to Arabian Fest in an amount up to $75,000 in order for that organiza-

tion to "[d]evelop a business plan to recruit new businesses along Muskego Avenue" in Milwaukee.

5. On or about May 16, 2002, Mhammad Abu-Shawish submitted to the City of Milwaukee a study entitled, "Muskego Avenue Re-development Plan." The study contained language stating that it was "prepared by Arabian Fest" and "Funded by Community Block Grant Administration." . . .

6. In fact, the submitted plan was not formulated by Arabian Fest or any other person acting at the direction or behest of that organization.

7. The submitted plan actually had been completed in December 2001 by an individual unrelated to Arabian Fest (hereinafter the "Original Plan"). The Original Plan was funded by an organization unrelated to Arabian Fest. The cost of the Original Plan was $25,000.

8. The submitted report was an identical copy of the Original Plan, except there were cosmetic changes, including the title, author, print font and some parts were excluded.

9. As a result, $75,000 in Federal block grant funds were spent by the CDBG-City administered fund on a study that had already been completed and paid for by another organization.

10. As part of that funding, on or about March 31, 2002, in the State and Eastern District of Wisconsin, Mhammad Abu Shawish submitted documentation to CDBG-City administered fund to OBTAIN more than $30,000 as reimbursement for alleged expenses associated with the study, when as the defendant well knew, no $30,000 in expenses had been incurred by Arabian Fest because

> Arabian Fest had not done the study. By doing so, Mhammad Abu Shawish obtained use of these funds through fraud.

Fourth Superseding Indictment-A.

The government argues that Abu-Shawish was properly charged under the statute because he was an agent of an organization that received federal funding, and he obtained federal funds in a fraudulent manner. Abu-Shawish's response, in essence, is that the indictment is insufficient because it does not charge that he was an agent of the organization he defrauded. In other words, he contends that the indictment alleges that he defrauded the City of Milwaukee, though he was not an agent of the City of Milwaukee. Indeed, the parties agree that Abu-Shawish was an agent of Arabian Fest within the meaning of the statute. The government does not try to argue that Abu-Shawish was an agent of the City of Milwaukee. Therefore, we must ascertain (1) whether the 18 U.S.C. § 666(a)(1)(A) requires that the individual charged serve as an agent for the organization that he defrauded, and if that is the case, then (2) whether the indictment properly alleges that Abu-Shawish fraudulently obtained funds from Arabian Fest.

As in all statutory construction cases, the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case; and the inquiry ceases if the language is unambiguous and the statutory scheme is coherent and consistent. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

The plain language of the statute at issue here seems to require that the individual act as an agent on behalf of the organization that he or she defrauded for the purposes of obtaining funds. The statute begins by restricting the criminal activity to an individual who is

an agent of "an organization, or of a state, local, or Indian tribal government, or any agency thereof." 18 U.S.C. § 666(a)(1). The statute then defines the criminal activity as embezzling, stealing, obtaining by fraud, "or otherwise without authority knowingly convert[ing] to the use of any person other than the rightful owner or intentionally misappl[ying], property." 18 U.S.C. § 666(a)(1)(A). The following two paragraphs are subordinate to this section and place two requirements on the fraudulently obtained property. The first limitation is that this property is "valued at $5,000 or more." 18 U.S.C. § 666(a)(1)(A)(i). The second limitation is crucial, in that it requires that the property is "owned by, or is under the care, custody, or control of such organization, government, or agency. . . ." 18 U.S.C. § 666(a)(1)(A)(ii). The phrase "such organization" here clearly refers back to section 1 of the statute, which limits the criminal liability to an agent of an organization. In other words, the agent who is potentially criminally liable must have fraudulently[5] obtained property that is under the care, custody or control of the same organization for which he is an agent. The final requirement, which is not an issue in this case, is that the organization receive "in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance" in any one year period. 18 U.S.C. § 666(b). In short, the

---

[5] We use the words "fraud," "fraudulently," and "stole" interchangeably to refer to the section of the statute that requires that the agent embezzle, steal, fraudulently obtain, knowingly convert or intentionally misapply property. 18 U.S.C. § 666(a)(1)(A). To be sure, the government only argues that the property was obtained through fraud, not that it was, for instance, intentionally misapplied. Moreover, the indictment itself does not use any of the statute's operative terms other than fraud.

plain meaning of the statute suggests that there must be an individual who acts as an agent of an organization, the individual must have unlawfully obtained funds from this organization, and the organization must receive over $10,000 in federal funds in any one year period.

The government counters by making a strained textual argument. It contends that the statute merely requires that the funds are under the care, custody, and control of the relevant organization (i.e., Arabian Fest). The corollary to this idea is that this organization does not also have to be the victim of the fraud. In other words, the government seems to suggest that an individual can be held criminally liable under this statute if he obtains funds by defrauding some other theoretical organization as long as he is an agent of an organization that then later has care, custody, and control of these funds.

This argument fails for four reasons. First, the very fact that the statute requires an agency relationship suggests that there is something germane about this position of trust. To be sure, the statute contemplates a situation where an insider in an organization that receives federal funds has fraudulently siphoned away funds from this organization. The government's reading would not even require the agent to actually take any money away from his organization for personal use. Second, the government's interpretation would require a temporal leap of logic. In particular, the statute punishes an agent who fraudulently obtains property that is owned by their organization. There is no change of tense in the statute: only one time frame is contemplated. The government's reading, however, would also punish an agent who fraudulently obtains property that is *then subsequently* owned by their organization (i.e., the events that transpired in the instant case). We see no reason to interlineate these words or an additional time frame into the plain text of the statute. Third, the statute only

mentions one organization, which implies that all three relevant attributes attach to the organization: it has custody of the funds, its agent committed the fraud, and it is victimized by the fraud. There is no mention of a second organization that is, instead, victimized by the fraud. Fourth, the government's reading of the statute would lead to absurd results. Specifically, on its view, an agent of an organization would be held criminally liable under this provision if she fraudulently obtained funds from any private organization or individual not in any way affiliated with the government so long as these funds were subsequently in the custody of her organization, and her organization incidentally (and independently) also receives $10,000 in federal funds that year. While Congress did indeed enact § 666 in order to "protect the integrity of the vast sums of money distributed through federal programs," S. REP. NO. 98-225 at 370 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3511, surely Congress did not intend to criminalize, with this provision, an act that does not implicate the integrity of federal funds (either directly or indirectly) in any way.[6]

---

[6] We are not holding that the government's interpretation of the statute would render it unconstitutional, as this Court and the Supreme Court have both ruled that § 666 does not require, from a constitutional perspective, a direct nexus between the federal funds and the prohibited act (e.g., fraud). *Sabri v. United States*, 541 U.S. 600, 605 (2004); *United States v. Spano*, 401 F.3d 837, 840-41 (7th Cir. 2005). The government is not required to prove, in the context of this provision, that federal funds were actually affected by the agent's actions. Rather, we have concluded here that the text of the statute, along with its purpose, does not compel a conclusion that Congress intended to criminalize (with this provision) the hypothetical situation delineated above, which is precisely what would be allowed under the government's reading.

Significantly, while neither this Court nor its sister circuits have dealt directly with this specific interpretive issue, prior commentary on § 666(a)(1)(A) suggests a reading that comports with our interpretation. *See, e.g.*, *United States v. Cruzado-Laureano*, 404 F.3d 470, 483-84 (1st Cir. 2005) ("[T]he government had to prove three elements beyond a reasonable doubt: (i) that Cruzado was 'an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof'; (ii) that Cruzado embezzled, stole, obtained by fraud, or converted or intentionally misapplied property 'valued at $5,000 or more' *from* 'such organization, government, or agency;' and (iii) that such 'organization, government, or agency receives, in any one year period [federal funds] in excess of $10,000.'") (emphasis added); *United States v. Pemberton*, 121 F.3d 1157, 1169 (8th Cir. 1997) (affirming defendant's conviction by rejecting argument that he was not an agent of the tribe from which he stole money); *United States v. Delano*, 55 F.3d 720, 729-30 (2d Cir. 1995) (affirming defendant's conviction by noting that he was not only an agent of the parks department but also an agent of the city, thereby making him an agent of an organization from which he stole funds); *United States v. Weaver*, 220 Fed.Appx. 88, 95 (3d Cir. 2007) ("'So basically, what is required . . . [is that] the defendant whose case you are considering was an agent of that [federally funded] organization and that that person obtained money *from the organization* by fraud.'") (emphasis added) (quoting jury instructions from the lower court). Indeed, there is not a single case that directly supports the reading that the government has proffered here.

The government argues, in the alternative, that even if the statute requires that the individual act as an agent for the organization that he defrauded, the indictment alleges enough facts to show that Arabian Fest was a

target of the fraud. In order to support this contention, the government maintains that Arabian Fest, not Abu-Shawish individually, was to receive the benefit of the federal grant from the City of Milwaukee. While this is true, it misses the point. The indictment simply alleges that Abu-Shawish fraudulently obtained money from the City of Milwaukee Community Block Grant Administration Office. The indictment does not allege that, as the Executive Director of Arabian Fest, Abu-Shawish did not have the authority to pay himself and others and pay other Arabian Fest expenses from Arabian Fest income. An indictment is considered deficient if it does not provide enough factual details to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). Here, there is not a single clause in the indictment that indicates that Abu-Shawish harmed Arabian Fest in any way. More importantly, there were also no allegations that he obtained the money by *deceiving* Arabian Fest.[7] Indeed, in order to have properly defended himself against the crime charged, Abu-Shawish needed to be on notice that he was going to have to show that he did not defraud his own company.

Without question, the indictment properly alleged and the evidence was sufficient to show that Abu-Shawish defrauded the City of Milwaukee. However, he was not an agent of the City of Milwaukee, and so he was not properly charged under 18 U.S.C. § 666(a)(1)(A). Nevertheless, the federal government still has broad power to protect the integrity of federal funds through statutes

---

[7] There was nothing in the indictment that suggested that Abu-Shawish hid facts from or lied to any stakeholders when he paid himself or transferred funds. In fact, at the sentencing hearing, the trial judge even noted that he felt that Abu-Shawish committed the fraud in order to keep Arabian Fest going.

that criminalize mail and wire fraud. It is likely that Abu-Shawish could have been charged with mail or wire fraud, since he used both the mail and telephone as a part of his fraudulent scheme. It is not for this Court to reflect on why the government chose to charge him with a violation of § 666(a)(1)(A) as opposed to mail fraud and/or wire fraud. At bottom, Abu-Shawish defrauded the City of Milwaukee, but the government is still required to charge him with the appropriate crime.

## III.  Conclusion

Because the indictment did not allege that Abu-Shawish defrauded the organization for which he served as an agent, we VACATE the conviction and REMAND the case for further proceedings consistent with this opinion.

A true Copy:

     Teste:

                     _____

                     *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*